IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ACCOUNTABLE HEALTH SOLUTIONS, LLC, and HOOPER HOLMES, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 16-cv-2494-DDC-TJJ |
| WELLNESS CORPORATE SOLUTIONS, LLC, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Compel Disclosure of Defendant's Financial Information (ECF No. 102). Plaintiffs request an order compelling Defendant to produce its financial documents responsive to Plaintiffs' Second Request for Production of Documents Nos. 5–9, all of which Plaintiffs argue seek information about Defendant's financial condition and are relevant to Plaintiffs' claim for punitive damages. Defendant opposes the motion, arguing that Plaintiffs' claim for punitive damages is spurious, the confidential financial documents requested are not relevant, and production of its financial information at this point in the litigation would be premature. For the reasons discussed below, the motion is granted in part and denied in part.

**I.   Relevant Background**

In 2014, Defendant Wellness Corporate Solutions, LLC and Accountable Health Solutions, Inc. ("AHS") entered into a Master Services Agreement ("Agreement")[1] whereby Defendant would provide preventive health wellness screening and immunization services to

---

[1] The Agreement includes the original March 4, 2014 Master Services Agreement and August 11, 2014 First Amendment to the Master Services Agreement.

AHS's customers and employees. In 2015, Hooper Holmes, Inc. acquired the assets of AHS and transferred the assets to its subsidiary, Accountable Health Solutions, LLC. Hooper Holmes, Inc. and Accountable Health Solutions, LLC are the Plaintiffs in this case.[2]

Plaintiffs allege that Defendant breached the competition provisions of the Agreement by soliciting and marketing its services to one of Plaintiffs' longtime customers, Building Materials Corporation of America d/b/a GAF ("GAF"). Plaintiffs also allege Defendant tortiously interfered with Plaintiffs' contract with GAF, as well as their prospective business expectancies or relationships with GAF. In their First Amended Complaint, Plaintiffs assert claims for breach of contract (Count I), breach of implied covenant of good faith and fair dealing (Count II), tortious interference with a contract (Count III), and tortious interference with prospective business expectancies or relationships (Count IV). Plaintiffs seek punitive damages in Counts III and IV. Defendant has asserted a breach of contract counterclaim for unpaid services allegedly provided and due under the Agreement.

## II. Requested Discovery

Plaintiffs served their Second Request for Production of Documents on Defendant on May 2, 2017. These requests sought the following financial documents relating to Defendant:

> **Request No. 5**: all monthly, quarterly, annual and year-end financial statements of WCS for 2015, 2016 and 2017 to date, including but not limited to, balance sheets, statements of profits and loss, general ledgers, accounts receivable and accounts payable.
>
> **Request No. 6**: all monthly, quarterly, or annual statements or reports from financial institutions pertaining to WCS's financial assets of any type whatsoever

---

[2] First Am. Compl. ¶13, ECF No. 6.

(including bank accounts, savings accounts, checking accounts, investment accounts) for the years 2015, 2016, and 2017 to date.

**Request No. 7**: all tax returns including all schedules, attachments, and worksheets filed by WCS in years 2015, 2016, and 2017 to date.

**Request No. 8**: all documents relating to any debts of WCS for the past three years, including but not limited to all notes, loan agreements, lease agreements, deeds of trust, mortgages, loan guarantees, bond agreements and trust indentures.

**Request No. 9**: all documents prepared or submitted by WCS to obtain a loan, lease or mortgage from a financial institution in the years 2015, 2016, and 2017 to date.

Defendant asserted the following objection to each of the above-referenced requests:

[Defendant] WCS objects to this request as seeking confidential and proprietary competitive information that would only be discoverable - if ever - in the event of an award of punitive damages in this case. The mere allegation of punitive damages does not entitle Plaintiffs to this information. WCS intends to move for the dismissal of the punitive damages claim in this case as having no basis in law or fact.[3]

After conferring with Defendant, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. 37.2, Plaintiffs filed the instant motion to compel on June 30, 2017.

## III.    Objections to the Requested Discovery

In response to Plaintiffs' motion to compel, Defendant argues that it should not be required to produce the requested financial information because Plaintiffs' claim for punitive damages is spurious. It also argues the Requests seek information that is not relevant to a punitive damages award. According to Defendant, Plaintiffs' mere allegation of punitive damages does not warrant the broad discovery requests seeking its confidential and proprietary

---

[3] Def.'s Resps. to Pls.' 2d Request for Prod. of Docs., ECF No. 102-2.

financial documents and information. Finally, Defendant argues it would be premature to produce the requested financial information at this point in the case.

### A.  Plaintiffs' Claim for Punitive Damages is Not Spurious

Generally, information about a party's current net worth or financial condition is relevant to the issue of punitive damages.[4] "When a punitive damages claim has been asserted by the plaintiff, a majority of federal courts permit pretrial discovery of financial information of the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages."[5] But a plaintiff seeking discovery of the defendant's financial condition in support of a claim for punitive damages must show the claim is not spurious.[6] To prove a claim is not spurious, a party must provide specific factual allegations to support its claim for punitive damages.[7]

---

[4] *Gust v. Wireless Vision, L.L.C.*, No. 15-2646-KHV, 2015 WL 9462078, at *5 (D. Kan. Dec. 24, 2015) (citing *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 152 (D. Kan. 1990)). *See also Aerotech Res., Inc. v. Dodson Aviation, Inc.*, No. 00-2099-CM, 2001 WL 395397, at *2 (D. Kan. Apr. 11, 2001) ("[I]f a plaintiff has alleged sufficient facts to claim punitive damages against a defendant, information of the defendant's net worth or financial condition is relevant because it can be considered in determining punitive damages.").

[5] *Mid Continent Cabinetry*, 130 F.R.D. at 151.

[6] *See id.* at 152 (plaintiff must show that his claim for punitive damages was not spurious in order to be entitled to discovery of the defendant's financial condition). *See also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 950282, at *13 (D. Kan. Mar. 26, 2007) ("[T]he Court need only find that the claims for punitive damages are not spurious for discovery [of the defendants' financial information] to proceed.").

[7] *Gust*, 2015 WL 9462078, at *5; *See also McCloud v. Bd. of Geary Cty. Comm'rs*, No. 06-1002-MLB-DWB, 2008 WL 1743444, at *4 (D. Kan. Apr. 11, 2008) (finding plaintiffs provided sufficient factual background to establish that their claim for punitive damages was not spurious); *Heartland*, 2007 WL 950282, at *13 (finding plaintiff made allegations sufficient to support its punitive damages claims).

In determining whether Plaintiffs' punitive damages claim is spurious, the Court looks to whether Plaintiff has made sufficient allegations—short of those needed to establish a *prima facie* case—to support a claim for punitive damages under the applicable law. In this case, Plaintiffs are seeking punitive damages based upon their state law claims for tortious interference with a contract (Count III), and tortious interference with prospective business expectancies or relationships (Count IV). Punitive damages are recoverable under Kansas law for claims styled as tortious interference.[8] Under Kansas law, a plaintiff making a claim for punitive damages has the "burden of proving, by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice."[9]

Plaintiffs allege in their First Amended Complaint that Defendant actively encouraged GAF to terminate its relationship with Plaintiffs and enter into an agreement directly with Defendant. Plaintiffs further allege that despite being aware of Plaintiffs' business relationship with GAF, and knowing that the competition provisions prohibited Defendant from encouraging customers to terminate their relationships with Plaintiffs, Defendant stole Plaintiffs' business relationship with GAF. Plaintiffs contend Defendant's actions constituted tortious interference with Plaintiffs' contract, business expectancies, and relationship with GAF. Plaintiffs request punitive damages in their claims for tortious interference with a contract (Count III), and tortious interference with prospective business expectancies or relationships (Count IV). They further

---

[8] *See Burrowwood Assocs., Inc. v. Safelite Glass Corp.*, 18 Kan. App. 2d 396, 398–99, 853 P.2d 1175, 1178–79 (1993) (affirming punitive damages award on a tortious interference with business relationships claim); *Heartland*, 2007 WL 950282, at *13 (finding punitive damages recoverable for a claim styled as tortious interference with prospective business relationship) (citing *Somnograph, Inc. v. Rodman*, No. 94,533, 2007 WL 518857, at *5–6 (Kan. Ct. App. Feb. 16, 2007)).

[9] K.S.A. 60-3701(c).

allege Defendant's actions were "wanton, willful, and malicious, entitling Plaintiffs to an award of punitive damages."[10] Based upon these allegations, the Court finds that Plaintiffs have made a sufficient showing to establish their punitive damages claim is not spurious, and thus meet the threshold requirements for discovery of Defendant's financial condition. The burden, therefore, is on Defendant to establish a legal basis as to why the requested information regarding its financial condition should not be produced, or why production should be postponed.

Defendant argues Plaintiffs' claim for punitive damages is barred by the limitation of liability provision of the Agreement, which expressly prohibits recovery of punitive damages for the tort-based claims pled by Plaintiffs in this case. Defendant has raised this "negotiated ban" issue in its Motion for Summary Judgment (ECF No. 100), which is currently pending before District Judge Crabtree. Because Plaintiffs are only required to establish their claim for punitive damages is not spurious in order to obtain discovery and they are not required to make a *prima facie* case,[11] the Court need not address this issue in ruling on Plaintiffs' motion to compel Defendant's financial information. Additionally, the Court rejects Defendant's argument that Kansas law precludes recovery of punitive damages in a breach of contract action absent proof of an independent tort resulting in an injury additional to injuries from the breach. As Plaintiffs point out, under Kansas law and the facts presented here (i.e., tortious interference claims based upon conduct not permitted under the contract that has allegedly been breached), a party may

---

[10] Pls.' First Am. Compl. ¶¶43, 50.

[11] *See Mid Continent Cabinetry,* 130 F.R.D. at 152 ("[T]he requirement that claimant establish a *prima facie* case applies to the admissibility of evidence about financial status, not its discoverability.").

maintain both contract and tort claims arising out of the same facts.[12] Thus, the Court finds Defendant has not shown that Plaintiffs' punitive damage claim is spurious.

> B. The Scope of the Requests for Defendant's Financial Information Must be Limited

Although Defendant did not expressly state a relevance objection in its initial discovery responses, the Court construes its response "[t]he mere allegation of punitive damages does not entitle Plaintiffs to this information" as a relevance objection. In its response to the motion to compel, Defendant argues that Plaintiffs' Requests seek information that is not relevant to a determination of punitive damages. It describes Plaintiffs as taking a kitchen sink approach to discovery by serving Requests that seek unfettered access to Defendant's confidential and proprietary financial records from the last three years. Defendant argues Plaintiffs fail to articulate how the specific information sought in the Requests is relevant to or needed for any calculation of punitive damages. They point to cases in this District finding only the current information of a party's net worth or financial condition to be relevant to a punitive damages award.

Plaintiffs maintain that the Requests at issue seek financial information from Defendant that is relevant to their claim for punitive damages and each Request seeks documents specifically relating to Defendant's net worth or financial condition. They further note that the Requests in dispute are limited to financial information for a three-year time period.

---

[12] *See Bittel v. Farm Credit Servs. of Cent. Kan.*, 265 Kan. 651, 660, 962 P.2d 491, 498 (1998) ("[W]hen the same conduct could satisfy the elements of both a breach of contract or of an independent tort, unless the conduct is permitted by the express provisions of a contract, a plaintiff may pursue both remedies.").

When discovery appears relevant on its face, the party resisting the discovery has the burden to establish facts justifying its objections by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

In this case, the Court finds all the Requests appear facially relevant to Plaintiffs' claim for punitive damages in that they seek documents pertaining to Defendant's financial condition. Defendant, as the party resisting the requested discovery, thus has the burden of justifying its relevancy objections. Defendant does not specifically address the lack of relevance or overbreadth of the specific documents (i.e., financial statements, tax returns, debt documents) sought by each Request, but rather argues generally that Plaintiffs have served broad, multi-party Requests that they attempt to justify with a glib and conclusory assertion that the Requests seek financial information needed to determine Defendant's net worth.

The Requests in dispute ask Defendant to produce its monthly, quarterly, annual and year-end financial statements (Request No. 5); all monthly, quarterly, or annual statements or reports pertaining to Defendant's assets (Request No. 6); tax returns (Request No. 7); documents relating to any of Defendant's debts (Request No. 8); and, any financial documents prepared or submitted to a financial institution in order to obtain a loan, lease or mortgage (Request No. 9). All five Requests are limited to "2015, 2016 and 2017 to date" or "the past three years."

Defendant is correct that multiple cases in this District have limited the scope of discoverable financial information relevant to the issue of punitive damages to the defendant's

most recent annual reports and current financial statements.[13] Reviewing the five discovery requests under this standard, the Court finds the specific financial information sought in Request Nos. 6, 7, and 8 goes beyond what is necessary or reasonable for Plaintiffs to show Defendant's net worth or financial condition, if their claim for punitive damages is allowed at trial. In addition, Request No. 7 seeks Defendant's tax returns with no showing by Plaintiffs of a "compelling need for the returns because the information contained therein is not otherwise readily obtainable."[14] The Court finds that only Request Nos. 5 and 9 seek financial information about Defendant's current net worth or financial condition. Request No. 5 appropriately seeks Defendant's financial statements, but the Court will limit production to Defendant's quarterly, annual and year-end financial statements, consisting of its balance sheets and statements of profit and loss. The Court does not consider "general ledgers, accounts receivable, and accounts payable" to be the type of "financial statements" that should be produced to show Defendant's financial condition for purposes of any punitive damages award or calculation. The Court will therefore limit Request No. 5 to Defendant's quarterly, annual and year-end financial statements, consisting of its balance sheets and statements of profits and loss.

Although the Requests in dispute are limited to "2015, 2016 and 2017 to date" or "the past three years," the Court finds this time period overly broad. The Court will therefore limit

---

[13] *See Heartland*, 2007 WL 950282, at *15 (limiting financial information required from the defendants concerning the issue of punitive damages to their most recent annual reports and current financial statements measured at the time set for defendants to produce such information); *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *4 (D. Kan. Oct. 5, 1995) (finding the most recent annual reports and current financial statements of the plaintiffs suffice to determine punitive damages).

[14] *Audiotext*, 1995 WL 625962, at *11.

Request Nos. 5 and 9 to Defendant's most recent financial information, which the Court defines as the one-year period prior to the date Defendant produces such information.

Accordingly, the Court sustains Defendant's relevance objections to Request Nos. 6, 7, 8, and Request No. 5 in part. The Court overrules Defendant's relevancy objection to Request No. 9 in its entirety and to Request No. 5 in part. Request No. 5 will be limited to Defendant's quarterly, annual and year-end financial statements, consisting of its balance sheets and statements of profits and loss. Both Request Nos. 5 and 9 will be limited to Defendant's most recent financial information, which the Court defines as the one-year period prior to the date Defendant produces such information.

The Court's rulings on Defendant's relevancy objections above, however, are without prejudice to renewal by Plaintiffs of their broader requests, if they subsequently establish that the financial statements and information produced by Defendant in accordance with this Memorandum and Order do not sufficiently demonstrate Defendant's net worth and/or financial condition for purposes of determining punitive damages.

**C. Delaying Production Will Address Defendant's Prematurity Objections**

Defendant next argues that the requests for production of its financial information are premature at this juncture of the case. Defendant urges the Court to follow other courts which have postponed disclosure of a defendant's confidential and proprietary financial records until after a finding at trial that the plaintiff was entitled to punitive damages. Defendant argues that the relative ease of making a plausible claim for punitive damages justifies postponing production. It also claims the need for delay is of particular import where, like here, the parties are business competitors, and the requested information could cause competitive harm.

Defendant alternatively requests that the Court postpone any ordered production of punitive damages discovery until at least after a ruling on the pending summary judgment motion.

Plaintiffs argue that requiring them to wait to conduct punitive damages discovery until after the Court has found that such punitive damages are awardable would be illogical and would drag the case on months after trial and may require a second trial on punitive damages. Plaintiffs also argue that postponing discovery until after a ruling on the pending dispositive motions would force them to obtain and review Defendant's financial documents just a few weeks before trial and while preparing for trial.

In *Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc*,[15] the defendants made similar premature-timing objections to production of their financial information relevant to punitive damages. Magistrate Judge Bostwick granted the motion to compel production of the defendants' financial information, but stayed production until after a dispositive motion ruling concerning the punitive damages claim. In his ruling, he noted that courts in the District of Kansas have followed a "varied practice" in determining whether to delay discovery of financial information relating to a punitive damages claim.[16] Other cases from this District have justified delaying discovery of financial records relevant to a punitive damages claim when the parties are business competitors and disclosure of one party's financial records to the other, even with a protective order, could harm the disclosing party.[17]

---

[15] No. 05-2164-MLB-DWB, 2007 WL 950282, at *13 (D. Kan. Mar. 26, 2007).

[16] *Id.*

[17] *See Audiotext*, 1995 WL 625962, at *3 (finding certain circumstances, such as harm from disclosing financial information to a competitor, would justify delaying discovery of financial records until trial or until the requesting party has proved a *prima facie* case for punitive damages); *Mid Continent*

In this case, Defendant has filed a Motion for Summary Judgment (ECF No. 100) in which it argues that Plaintiffs' claim for punitive damages is barred by a contractual "Limitation of Liability" provision. Like *Heartland*, this Court will stay production of the financial information requested from Defendant, and allowed by this Order, until after a ruling on the pending dispositive motion. The Court's decision to postpone production is bolstered by the fact that the parties are business competitors, which presents a stronger likelihood that disclosure of Defendant's financial records to Plaintiffs could cause competitive harm to Defendant. Delaying the production to a point closer to trial will also result in Defendant producing more "current" information than would be produced now.[18]

The Court therefore stays production of any discovery ordered herein until the District Judge determines whether Plaintiffs' claim for punitive damages survive any dispositive motion filed by Defendant. Thus, Defendant will not be required to produce the financial documents and information ordered herein until fourteen (14) days following a ruling on Defendant's Motion for Summary Judgment (ECF No. 100), provided that Plaintiffs' claims for punitive damages remain in the case.

---

*Cabinetry*, 130 F.R.D. at 152 ("For example, if a plaintiff and defendant were business competitors, disclosure of defendant's financial records to the plaintiff, even with a protective order, could cause the defendant great harm. In such circumstances, a delay in discovery until a prima facie showing of entitlement to punitive damages is shown might be justified.").

[18] *Learjet, Inc. v. MPC Prods., Corp.*, No. 05-1074-MLB-DWB, 2007 WL 2287836, at *4 (D. Kan. Aug. 8, 2007).

**IV.     Modification of the Current Protective Order is Not Necessary**

The Court next addresses Defendant's request that the attorneys' eyes only provision of the current Protective Order be modified to restrict Plaintiffs' access to the financial information at issue to its outside counsel, or to those in-house counsel and/or party representatives without competitive decision-making authority.  Defendant argues the existing Protective Order is not sufficient to prevent harm with respect to disclosure of its financial information.

Plaintiffs contend the Protective Order currently in place will sufficiently protect Defendant's financial documents. They point out that the current Protective Order has sufficiently protected the dissemination of documents containing sensitive pricing information and proprietary data for the past nine months.

The Court agrees with Plaintiffs that the Protective Order currently in place will sufficiently protect Defendant's financial documents. Defendant's request for modification of the existing attorneys' eyes only provision of the current Protective Order is denied.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Disclosure of Defendant's Financial Information (ECF No. 102) is **GRANTED IN PART AND DENIED IN PART**.  The motion is denied as to Request Nos. 6, 7, and 8.  The motion is granted in part as to Request Nos. 5 and 9, subject to the following limitations:  Request No. 5 will be limited to Defendant's quarterly, annual and year-end financial statements, consisting of its balance sheets and statements of profits and loss. Both Request Nos. 5 and 9 will be limited to Defendant's most recent financial information, which the Court defines as the one-year period prior to the date Defendant produces such information.  Defendant shall produce documents and information responsive to Request Nos. 5 and 9 and in accordance with this Memorandum and Order **within**

**fourteen (14) days after** the Court rules on Defendant's Motion for Summary Judgment (ECF No. 100), provided that Plaintiffs' claim for punitive damages remains in the case.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 31st day of July, 2017.

_/s/ Teresa J. James_
Teresa J. James
U. S. Magistrate Judge